1998 ND 55
**Larry Ray LINRUD, Plaintiff and Appellee,**

v.

**Carlotta Jean LINRUD, Defendant and Appellant.**

**Civil No. 970238.**

Supreme Court of North Dakota.

March 5, 1998.

Kelly A. Dillon, Minot, for defendant and appellant.

Arthur W. Stokes, Wahpeton, for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1] Carlotta Linrud appeals from the trial court's divorce judgment of December 22, 1995, as supplemented by additional findings of fact and conclusions of law dated June 18, 1997. We affirm.

I

[¶ 2] This case is on appeal for the second time. A full statement of the facts can be found at *Linrud v. Linrud,* 552 N.W.2d 342 (N.D.1996) (*Linrud I*). *Linrud I* was an appeal of the property division in a long-term marriage between Carlotta and Larry Linrud resulting in a 66/34 percent split of the marital property in favor of Larry. *Id.* at 344. The trial court's property division included a cash award to Carlotta of $200,741 plus interest.[1] *Id.* Carlotta appealed, challenging the trial court's property division claiming entitlement to an equal distribution, certain assets were not accounted for in the marital estate, and the child support award was erroneous.

[¶ 3] In *Linrud I,* we affirmed the trial court's child support determination. *Id.* at 347. However, we reversed and remanded the property distribution, directing the trial court to either adequately explain the substantial disparity in its property division or revise the property division to make it more equitable. *Id.* at 346. We also directed the trial court to revisit the issue of assets allegedly missing from the marital estate. *Id.* at 345.

[¶ 4] On remand, the trial court held further proceedings on the matter of the alleged missing marital assets.[2] The trial court found there was no evidence presented to show any assets or income were not accounted for or that any assets or income had been dissipated. On remand, the trial court did not adjust the asset listing or valuation of marital property.

[¶ 5] In its June 18, 1997, additional findings, the trial court provided further findings explaining its rationale for the substantial disparity in its initial property distribution. The primary reasons the trial court awarded the bulk of the marital estate to Larry were to keep the farming operation intact and to avoid unfavorable tax consequences on liquidation. In addition, by awarding Carlotta a cash award, the court attempted to equalize the parties' incomes and standards of living.

[¶ 6] Carlotta again appeals from the trial court's property division, arguing the court erred in finding all the marital assets had been adequately accounted for, and by not awarding her one-half of the marital estate.

II

[¶ 7] The trial court is required, under N.D.C.C. § 14–05–24, to make an equitable distribution of the marital assets. The trial court must consider the relevant *Ruff–Fischer* guidelines in dividing marital property. *Gibbon v. Gibbon,* 1997 ND 210, ¶ 6, 569 N.W.2d 707 (relying on *van Oosting v. van Oosting,* 521 N.W.2d 93 (N.D.1994); *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D. 1966)). An equal division of marital property is a logical starting point in a long-term marriage. *See Linrud,* 552 N.W.2d at 346; *van Oosting,* 521 N.W.2d at 99. The trial court must divide the property based on the circumstances of each individual case, as there is no set formula for dividing a marital estate. *Gibbon,* 1997 ND 210 at ¶ 6, 569 N.W.2d 707. The division need not be equal

---

1. The original judgment required Larry to pay the amount in full, or to make ten annual payments of $20,074.10 plus interest. As reflected in the record, Larry borrowed $214,908.26, an amount which included interest, to pay Carlotta the full amount agreed upon as of December 1, 1995. Carlotta initially refused to accept pay-

ment. The trial court ordered enforcement of the judgment in February 1996.

2. Tom Slorby represented Carlotta for all proceedings before the trial court. Kelly A. Dillon represented Carlotta on both appeals.

to be equitable, but the trial court should reasonably explain a substantial disparity. *Fisher v. Fisher*, 1997 ND 176, ¶ 15, 568 N.W.2d 728. The trial court's determinations on valuation of and division of marital property are findings of fact that will be reversed only if they are clearly erroneous. *Zuger v. Zuger*, 1997 ND 97, ¶ 6, 563 N.W.2d 804 (quoting *Grinaker v. Grinaker*, 553 N.W.2d 204, 207–08 (N.D.1996)). A finding of fact is clearly erroneous if, after reviewing the entire record, the reviewing court is left with a definite and firm conviction a mistake has been made or if the finding is induced by an erroneous view of the law. *Id.* at ¶ 6; *Gibbon*, 1997 ND 210 at ¶ 6, 569 N.W.2d 707. We view the trial court's findings as presumptively correct, placing the burden on the complaining party to demonstrate on appeal that a finding is clearly erroneous. *Zuger*, 1997 ND 97, ¶ 6, 563 N.W.2d 804.

### III

[¶ 8] Carlotta contends the trial court erred in concluding all of the marital assets and debts have been fairly determined and required no adjustment. Many of the assets questioned in the first appeal have been adequately accounted for. Carlotta still claims Larry inappropriately used $23,055.92 in marital assets for business and personal expenses. We disagree.

[¶ 9] On remand, the trial court heard additional testimony from Larry. His testimony included evidence of bank statements and checks showing nearly each expenditure and deposit he made during the pendency of the divorce. The testimony revealed Larry paid for personal expenses for himself and his son, and paid for business-related expenses. However, Larry also testified he did not pay himself a salary out of the farm income. Instead, when Larry needed money for personal or household expenses, he wrote a check out of the accounts in question.

[¶ 10] The trial court found the bank statements showed the deposit of income and payment for expenses for the farm and business, including deposits for the sale of assets. The trial court also found the bank statements showed the payment of personal expenses and taxes. In its findings, the court specifically stated: "No evidence was presented to show that any assets or income were not accounted for or that any assets or income were dissipated."

[¶ 11] The parties were separated for just over a year before the trial began. We do not believe it clearly erroneous for the trial court to find all assets had been accounted for. Certainly, Larry is entitled to payment, by way of living expenses, for his farm labor, and $23,055.92 does not seem like an exorbitant amount to spend on living expenses for a year's time for a father and son. In her second appeal, Carlotta has again failed to prove how any of the money was unaccounted for or inappropriately spent by Larry. We affirm the trial court's findings on valuation of the marital estate and the accounting of marital assets.

### IV

[¶ 12] Carlotta argues the trial court erred in distributing the marital property. We disagree.

[¶ 13] "[W]e have recognized the importance of preserving the viability of a business operation like a family farm, and the potential for economic hardship if those type of entities are divided." *Gibbon*, 1997 ND 210 at ¶ 7, 569 N.W.2d 707 (citations omitted). We have upheld property divisions in cases in which one spouse receives farm assets, while the other spouse receives an offsetting monetary award. *Id.* at ¶¶ 7–8. Carlotta argues entitlement to an equal division of marital assets, but she concedes she does not want the farm to be liquidated. Instead, she seeks a larger cash award. Carlotta has not shown anything in the record pointing to how the trial court could make a larger cash award and still keep the farm intact. A senior credit officer of Farm Credit Services testified Larry could probably carry about $150,000 in debt, and still keep the farm intact. Considering this testimony, the trial court ordered Larry to pay a cash award of $200,741. Apparently, the trial court ordered a cash award higher than the amount the expert opined in an attempt to make a more equitable property division. Nothing in the evidence Carlotta presented shows us how the trial court could have made a more equal division of property and still have kept the farm intact. As we stated in *Anderson v.*

*A.P.I. Co. of Minnesota,* 1997 ND 6, ¶ 25, 559 N.W.2d 204, judges, whether trial or appellate, are not obligated to engage in unassisted searches of the record for evidence to support a litigant's position. *Cf. Anderson v. Anderson,* 504 N.W.2d 569, 571 (N.D.1993) (recognizing where litigant makes no effort to present evidence to support a position, a trial court's findings to the contrary do not constitute reversible error). We deem Carlotta's failure to present evidence showing how the trial court could make both an equal division of marital property and keep the farm intact as a concession that no such evidence exists.

[¶ 14] The trial court, in its additional findings, also used as its rationale that the cash payment or payments equalize the parties' incomes. We have considered equalization of income to be appropriate when the circumstances justify it. *Glander v. Glander,* 1997 ND 192, ¶ 18, 569 N.W.2d 262. In *Glander,* we upheld indefinite spousal support in an attempt to equalize the parties' incomes. *Id.* at ¶¶ 16–18. Here, Carlotta did not request spousal support. We do not think it clearly erroneous for the trial court to attempt to equalize the parties' incomes in its division of property, when spousal support was not even presented to the trial court. Because the trial court made additional findings on remand regarding keeping the farm intact, and attempted to equalize the parties' incomes, we are convinced the trial court did not rely solely on the incomes of the parties in dividing the marital property.

[¶ 15] Trial courts should not, however, use percentages of past incomes as a sole basis for dividing marital property. Likewise, phantom tax consequences are not a relevant basis on which to divide marital property. While we acknowledge that a properly informed trial court must consider tax effects in a divorce, the tax consequences should only be considered when the liability is certain to occur within a short time following the dissolution. *Kaiser v. Kaiser,* 474 N.W.2d 63, 69 (N.D.1991); *see also Wald v. Wald,* 556 N.W.2d 291, 294 (N.D.1996); *Fisher,* 1997 ND 176, ¶ 35, 568 N.W.2d 728. In *Kaiser,* we stated,

"[A] trial court in a divorce action should consider potential taxes in valuing marital assets only if (1) the recognition of a tax

liability is required by the dissolution or will occur within a short time; (2) the court need not speculate about a party's future dealing with the asset; (3) the court need not speculate about the possible future tax consequences; and (4) the tax liability can be reasonably predicted."

*Kaiser,* 474 N.W.2d at 69–70.

[¶ 16] Here, Carlotta was not requesting liquidation of the farm, therefore, the projected tax consequences from such a transaction are speculative and irrelevant. However, the tax consequences of Larry's cash payments would have been relevant to show the amount Larry could afford to pay given the tax consequence. The tax consequences of the cash payments were not addressed below. Again, Carlotta failed to properly marshal her case, as no evidence was presented to the trial court regarding the tax consequences of the cash payments.

V

[¶ 17] Based on the facts and evidence presented to the trial court, and considering the limitations placed on the trial court by Carlotta's position not to liquidate the farm, the trial court's findings on the valuation and accounting for assets of the marital estate, and the property distribution cannot be said to be clearly erroneous.

[¶ 18] We, therefore, affirm the trial court's divorce judgment as supplemented by additional findings of fact and conclusions of law.

[¶ 19] MARING, MESCHKE and SANDSTROM, JJ., concur.

VANDE WALLE, C.J., concurs in the result.