2006 ND 133

**Larry ULSAKER, Plaintiff and Appellee**

v.

**C. True Bright WHITE, Defendant and Appellant.**

**No. 20050207.**

Supreme Court of North Dakota.

June 29, 2006.

Mary E. Nordsven, Hardy, Maus & Nordsven, P.C., Dickinson, ND, for plaintiff and appellee.

Eugene F. Buresh, Dickinson, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] C. True Bright White appeals from a divorce judgment arguing property was inequitably divided in favor of Larry Ulsaker, and the award of spousal support was inadequate to off-set the inequitable distribution of property. Because the district court divided the property unequally without adequately explaining its distribution, we reverse and remand.

I

[¶ 2] The couple first met in Bangkok, Thailand, in 1960, and were eventually married in Columbia, Missouri, on October 22, 1988. The marriage lasted 16 years. At the time of the divorce, Ulsaker was healthy, 67 years old, and living on his ranch near Medora. White was 66 years old, healthy, and living in Dickinson. Both parties hold advanced degrees: Ulsaker has a master's degree in soil science and a doctorate in plant physiology; White has a master's degree in guidance and counseling and substantial hours toward a doctorate in communications.

[¶ 3] The couple lived eclectic lifestyles. Ulsaker taught at various universities and worked overseas on agricultural development projects. He currently operates a ranch near Medora and receives approximately $1,000 in government benefits per month from social security and civil service. His average yearly gross income is approximately $77,000. White was a guidance counselor in the Denver school system, started a dress design and fabrication business in Denver, and continued designing and selling clothes in Columbia, Missouri. Her clothing business continued when she moved to North Dakota, but was not as successful when she lived in Dickinson and Minot. She currently receives approximately $600 a month in rental income from property she owns and receives less than $100 in social security each month. Her expenses are approximately $1,400 per month. Her average yearly gross income is approximately $20,000.

[¶ 4] Before their marriage, White asked Ulsaker to sign a prenuptial agreement, which he refused to do. When asked why he did not sign the prenuptial agreement, Ulsaker stated: "I didn't see any reason for it, we were going to keep our things separate anyway and that's what it amounted to, so what difference does a piece of paper make?" At the time of the marriage, White believed she had more assets than Ulsaker, but neither party had a complete understanding of the total assets of the other spouse. This separation of finances continued throughout the marriage. Both parties kept property in their own names, paid their own property taxes, and filed separate tax returns. The couple did share household expenses through a joint checking account. White described the parties' understanding at the time of marriage.

Q. Now, apparently you came to this marriage understanding that Larry's mother and father were wealthy?

A. Yes.

Q. That's correct? And did I hear you testify that early on, understanding that his family was wealthy, it was never you[r] intention to come into this marriage to get at his family's wealth?

A. That was the purpose of the prenuptial agreement that he never responded to.

Q. So, at the very beginning you never intended that Larry's family's wealth would come to you?

A. I even promised, yes.

Q. You even promised that to Larry?

A. No, to his whole family, to Larry, I did not come into the marriage looking for money and I made that clear in the ensuing fifteen years with my money.

Q. Okay. And from the very beginning, from the very beginning, despite the fact that Larry didn't sign a prenuptial agreement he followed your request and kept assets separate from your assets?

A. I generously did not ask him for his.

Q. The two of you kept your assets separate, did you not?

A. Yes, we did.

[¶ 5] The parties enjoyed a comfortable standard of living during their marriage, but were frugal with their expenditures. The combined assets of the parties were substantial. In the N.D.R.Ct. 8.3 property and debt listing, White claimed the parties had $6,123,949.78 and Ulsaker claimed the amount was actually $5,526,214.31. The district court did not make an explicit finding on the value of the marital property. Approximately one million dollars worth of assets were in White's name, with the remaining four to five million dollars attributable to Ulsaker. The assets of both parties included inherited property. The parties reported no debt.

[¶ 6] After a bench trial, the court granted each party their separately owned property. Consistent with Ulsaker's recommendation, the court awarded White spousal support in the amount of $1,000 per month for life, or until she remarried. The court also awarded White a $250,000 cash payment. Part of the cash payment was a return of $100,000 which represented the value of Medtronic stock. The remaining $150,000 was to help White "reestablish her life." The $100,000 of Medtronic stock, originally valued at $10,000, was given to White from Ulsaker's mother. White testified she transferred the stock to Ulsaker to show that she did not come into the marriage looking for money.

[¶ 7] Following the order, Ulsaker requested a new trial on the basis of newly discovered evidence. Ulsaker discovered

evidence that demonstrated White's testimony that she transferred the stock to Ulsaker was incorrect. The court issued a brief order stating: "When truth is neglected, a new trial is required." However, the parties stipulated to the facts that would have been presented at a new trial informing the court that the evidence presented at the original trial was incorrect. Based on the stipulation of the parties, the court amended its previous order removing the value of the stock transfer from the cash payment, thus amending the cash payment from $250,000 to $150,000.

[¶ 8] The final distribution of property appears to be that Ulsaker will receive four to five million dollars of the estate. White will receive approximately one million dollars from the estate, a cash payment of $150,000, and support of $1,000 a month for life, or until she remarried.

[¶ 9] White appealed arguing the district court's decision to grant each party their separate property is inequitable because Ulsaker has substantially more assets in his name than does White. Furthermore, White argues the award of spousal support is inadequate to compensate for the inequitable distribution of property. Ulsaker believes the division of property is equitable because of the separation of assets throughout the marriage.

## II

[¶ 10] Under N.D.C.C. § 14–05–24(1), the district court must make an equitable distribution of the property of the divorcing parties. *Horner v. Horner,* 2004 ND 165, ¶ 9, 686 N.W.2d 131. All assets, whether separately obtained or inherited property, are to be considered part of the marital estate. *Bladow v. Bladow,* 2003 ND 123, ¶ 6, 665 N.W.2d 724. When all of the assets and debts have been included, the district court is to apply the *Ruff–Fischer* guidelines for an equitable

distribution of the property. *Neidviecky v. Neidviecky,* 2003 ND 29, ¶ 10, 657 N.W.2d 255. Under these guidelines, a court is to consider:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Horner,* at ¶ 9.

[¶ 11] In this case, the district court, without reference to the *Ruff–Fischer* guidelines, gave each party the property that was in his or her own name. The court concluded:

> Here's what I think (and order):
>
> Both of them came into this marriage with their separate estates which neither of them intended to co-mingle. And they didn't.
>
> Both of them should leave the marriage with what they brought along and anything that they got from their families along the way. And their own personal property.

The court based this conclusion on the perceived lack of a marital estate. The court stated that it doubted "if there is such a thing" as a marital estate in this case. This was apparently due in part to the separate lives the parties lived and the fact that the "parties accumulated virtually no joint assets."

[¶ 12] Determining whether property was acquired before or after mar-

riage can be considered in making an equitable division of property. *Bladow*, 2003 ND 123, ¶ 8, 665 N.W.2d 724. However, the origin of property is not the sole or, necessarily, the controlling factor under the *Ruff–Fischer* guidelines. *Id.* We have stated that all property, regardless of source, is to be considered marital property. *Id.* at ¶ 6. Property held individually, rather than jointly, does not preclude the inclusion of the property in the marital estate. *Barth v. Barth*, 1999 ND 91, ¶ 8, 593 N.W.2d 359. "We have repeatedly held that property brought into the marriage by one party, and separate property acquired by gift, inheritance, or otherwise, must be included in the marital estate and is subject to distribution." *Id.* Even property acquired prior to the marriage by one spouse is considered as part of the marital estate in determining an equitable division. *Heley v. Heley*, 506 N.W.2d 715, 718 (N.D. 1993).

[¶ 13] Thus, a trial court must start with a presumption that all property held by either party whether held jointly or individually is to be considered marital property. The trial court must then determine the total value of the marital estate in order to make an equitable division of property. Marital property ordinarily will be valued as of the date of trial. *Grinaker v. Grinaker*, 553 N.W.2d 204, 208–09 (N.D. 1996). After a fair evaluation of the property is made, the entire marital estate must then be equitably divided between the parties under the *Ruff–Fischer* guidelines. *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255.

[¶ 14] There is no set formula for dividing a marital estate, but the trial court must equitably divide the property based upon the particular circumstances of each case. *Horner v. Horner*, 2004 ND 165, ¶ 12, 686 N.W.2d 131. An equal division of marital property is a logical starting point in a long-term marriage. *Linrud v. Linrud*, 1998 ND 55, ¶ 7, 574 N.W.2d 875. Thus, "we begin with the view that marital property should be equally divided and substantial disparities must be explained." *Kautzman v. Kautzman*, 1998 ND 192, ¶ 21, 585 N.W.2d 561. While we have said a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage, *Horner*, at ¶ 12, marriages of longer durations, 16 years in this case, generally support an equal distribution of property. *Schoenwald v. Schoenwald*, 1999 ND 93, ¶ 23, 593 N.W.2d 350. Despite these generalities, duration of a marriage is only one factor of the *Ruff–Fischer* guidelines and is only one factor to be considered in a distribution of marital property. *Lill v. Lill*, 520 N.W.2d 855, 857 (N.D.1994).

[¶ 15] In this case, it appears the district court misunderstood the law of this state and thus misapplied the law by concluding that not all the property held by the parties was marital property. The court apparently believed that property held by the parties could be considered non-marital property because the majority of the property was listed under individual names, rather than jointly held. This is an erroneous interpretation of our caselaw.

[¶ 16] The final distribution of property appears to be that Ulsaker was to receive four to five million dollars of the estate. White was to receive much less: approximately one million dollars from the estate, a cash payment of $150,000, and a monthly disbursement of $1,000 a month for life, or until she remarried. The district court, by awarding the property to who "brought [it] along," created a substantial disparity of approximately four million dollars that was not adequately explained. This large financial disparity is aggravated by the district court's failure to make a finding as to

the total value of the marital estate. It is unclear if the district court had a clear understanding of the total value of the estate in this case. There was an approximately one million dollar gap in the parties' estimation of the value of the entire marital estate.

[¶ 17] We have stated that a property division need not be equal, but a substantial disparity must be explained. *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 23, 673 N.W.2d 601. With adequate findings following the *Ruff–Fischer* guidelines, the disparity in the property award of this case may be appropriate. But to the extent the district court made any findings in this case, they were insufficient to consider the substantial variation of property values, insufficient to explain the court's rationale for the disparity in the property division, and based on the erroneous concept of what constitutes the marital estate.

[¶ 18] Because the district court misapplied the law and did not sufficiently explain the substantial disparity in the distribution of property, we reverse and remand to the district court.

### III

[¶ 19] White argues the award of $1000 per month in spousal support is inadequate to compensate for the inequitable distribution of property.

[¶ 20] Section 14–05–24.1, N.D.C.C., provides, "[t]aking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time." An award of spousal support is to be based on consideration of the *Ruff–Fischer* guidelines. *Sack v. Sack*, 2006 ND 57, ¶ 11, 711 N.W.2d 157; *Staley v. Staley*, 2004 ND 195, ¶ 8, 688 N.W.2d 182. A separate finding that a spouse is "disadvantaged" is not necessary for an award of spousal support. *Sack v. Sack*, 2006 ND

57, ¶¶ 11–12, 711 N.W.2d 157. We have recognized that a difference in earning power should be considered when determining spousal support. *Sommers v. Sommers*, 2003 ND 77, ¶ 17, 660 N.W.2d 586. Property division and spousal support ordinarily must be examined and dealt with together. *Id.* at ¶ 15.

[¶ 21] The district court's findings, which were issued before this Court's decision in *Sack*, stated: "Neither party forfeited opportunities, career or otherwise, as a consequence of the marriage." The court awarded permanent spousal support in the amount of $1,000 per month apparently because Ulsaker had agreed to pay that amount. Because we are reversing the district court's division of property, and a different division of property may influence the award and structure of spousal support, the district court may reconsider the award of spousal support when it reconsiders an equitable property distribution. On remand, the court is to consider the *Ruff–Fischer* guidelines in determining what amount of spousal support is appropriate.

### IV

[¶ 22] The judgment of the district court is reversed and remanded.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 24] I dissent. The record reflects that the district court included all the property in the marital estate. The district court's rationale for the division of the property consistent with the *Ruff–Fischer* guidelines is apparent. "We view the trial court's findings as presumptively correct, placing the burden on the complaining party to demonstrate on appeal that a finding

is clearly erroneous." *Linrud v. Linrud,* 1998 ND 55, ¶ 7, 574 N.W.2d 875. The majority has not adhered to this standard.

[¶ 25] This case is not a case in which young, previously unmarried adults with few assets married and then, at divorce, with one spouse having accumulated significantly more assets than the other, required that equitable property division be fairly equal lest the less wealthy spouse be disadvantaged. This case presents two mature, successful, and wealthy adults who married later in life, each having been married before. They chose to keep their assets separate, neither wanting to seek the assets of the other, until they divorced. The district court acknowledged these facts and found, in its opinion, the most equitable arrangement would be for the parties to leave the marriage with their own individual assets. Because the district court weighed all the evidence and came to what it concluded was the most equitable arrangement in light of those facts, the district court did not clearly err.

[¶ 26] The majority has erroneously concluded that the district court misapplied the law and did not sufficiently explain what the majority perceives to be a substantial disparity in the distribution of property.

### I

[¶ 27] The majority argues the district court misapplied the law by not including all the property held by the parties in the marital estate. It says at ¶ 15:

In this case, it appears the district court misunderstood the law of this state and thus misapplied the law by concluding that not all the property held by the parties was marital property. The court apparently believed that property held by the parties could be considered non-marital property because the majority of the property was listed under individual

names, rather than jointly held. This is an erroneous interpretation of our case-law.

This stretch by the majority is compounded by the fact that the appellant never argued that all of the property was not included in the marital estate. Further, the majority never tells us what marital property was not included in the marital estate. What marital property did the district court fail to distribute?

[¶ 28] In previous cases, this Court has specifically known what property or debt the district court did not include. *See Brandner v. Brandner,* 2005 ND 111, ¶ 10, 698 N.W.2d 259 ("The trial court erroneously treated Allan's $659,771 business debts accumulated during the marriage as 'non-marital debts.'"); *Neidviecky v. Neidviecky,* 2003 ND 29, ¶ 11, 657 N.W.2d 255 ("in finding the total marital debt was $17,078 the trial court only considered $4,700 as marital debt out of a total claimed loan of $14,800 from Justin's parents"); *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 622 (N.D.1994) ("the court's decision reveals that it treated the gifts received by the Gaulrapps as separate property and excluded their value from the marital estate"); *Heley v. Heley,* 506 N.W.2d 715, 718 (N.D.1993) ("we agree with Vikki that the trial court erred in excluding from the marital estate, prior to distribution, Larry's $7,000 worth of 'pre-marital property'"); *Anderson v. Anderson,* 368 N.W.2d 566, 569 (N.D.1985) (the district court found "'that the farm land and mineral interests which the defendant [Charles] inherited from his father is not a marital asset'"); *Hoge v. Hoge,* 281 N.W.2d 557, 561 (N.D.1979) ("Although there was sufficient evidence before the court from which to determine the value of the personal farm property, the findings reveal that the court based the property division solely on

the value of the real property owned by the parties.").

[¶ 29] In this case, however, the district court never said it was excluding property from the marital estate. The majority illogically assumes this must mean the district court excluded all of it. A district court's findings of fact are presumptively correct, and the complaining party must demonstrate on appeal that the findings are clearly erroneous. *Linrud,* 1998 ND 55, ¶ 7, 574 N.W.2d 875. Under this true presumption, we should presume the district court included all the parties' property in a marital estate. If the district court had not included all the property in the marital estate, how could it distribute the property? The district court knew it had to consider all the property. In its order it specifically said, "But our case law says that there should be an equitable distribution. And 'equitable' often means equal. Where it is not equal, it must be explained by the Rogue Judge." Therefore, the more logical conclusion is that the district court included all the property in the marital estate and found the most equitable result would be for the parties each to take their own property.

## II

[¶ 30] The majority argues the district court did not sufficiently explain the substantial disparity in the distribution of property. When making its findings, the district court must consider the *Ruff-Fischer* guidelines, which include the duration of the marriage and each party's age, earning ability, conduct, station in life, necessities, health, and financial circumstances. *Horner v. Horner,* 2004 ND 165, ¶ 9, 686 N.W.2d 131. The district court must provide a rationale for its findings. *Id.* "Findings of fact are adequate if they provide this Court with an understanding of the district court's factual basis used in reaching its determination." *State v. Bergstrom,* 2006 ND 45, ¶ 15, 710 N.W.2d 407.

[¶ 31] The facts of this case are unusual. The parties married later in life, both having been married before. They were both highly educated and successful prior to marrying. Each owned substantial assets prior to the marriage. Each party presented evidence that they had decided to keep their property separate and that neither wanted the assets of the other. Each had substantial assets at the end of the marriage. This is not a case of disparity and inequality. Each party was older, financially secure, and in relatively good health, and they had conducted themselves as independent property owners during the marriage. The district court recognized these facts and found that the most equitable division in this unusual case would be for both parties to walk away with their own individual property. The district court's findings clearly state the rationale for its decision: the conduct of the parties in keeping their substantial property separate contemplates that both should keep their own property after marriage. This decision may not be equal, but one cannot claim it is inequitable in light of the known facts. *See Hoge,* 281 N.W.2d at 561 ("There is no requirement that a property division be equal in order to be equitable."). Therefore, the district court's findings are not clearly erroneous.

## III

[¶ 32] I would affirm the district court.

[¶ 33] Dale V. Sandstrom