Dorothy LINN, Plaintiff and Appellant,

v.

Roger LINN, Defendant and Appellee.

Civ. No. 10710.

Supreme Court of North Dakota.

June 27, 1985.

Karen Wills (argued), of Kuchera, Stenehjem & Wills, Grand Forks, and Ward D. Briggs, Fargo, for plaintiff and appellant.

Frank L. Racek, of Lanier, Knox & Olson, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

Dorothy Linn appealed from a judgment of divorce issued on March 29, 1984, by the district court of Cass County. Dorothy Linn contends on appeal that the trial court's distribution of property and award of temporary alimony are clearly erroneous. We affirm.

Dorothy and Roger Linn were first married on May 14, 1953. The parties were divorced on February 16, 1975, and were remarried on September 24, 1976. Dorothy commenced an action for divorce in June of 1979; that action was dismissed in February 1981. Dorothy initiated this action for divorce in September of 1982 and, following a trial, the district court granted the parties a divorce on the ground of irreconcilable differences. At the time of the trial in the present divorce case, Dorothy's age was 57 and Roger's was 67. The parties have two adult children.

Dorothy and Roger are in good health with the exception that Dorothy has arthritis in her hands, knees, and feet, and a cartilage problem in a knee that makes walking any distance difficult.

Dorothy's educational background consists of a high school education with no other formal training. Dorothy's employment history includes various clerical, secretarial, and sales experience. She was not employed at the time of the hearing. Dorothy introduced evidence by an employment agency that indicated her chances of obtaining work were nil because of her lack of experience and her age. The trial court, while considering that evidence, determined that Dorothy was capable of working and obtaining employment, particularly in the sales or secretarial areas. The court stated that Dorothy needed employment to rehabilitate herself as a single person and that the court would consider her future income from her employment in arriving at her spousal support.[1]

Roger has extensive work experience in real estate sales, and he is the sole shareholder of First Realty, Inc. Roger started First Realty shortly after his remarriage and capitalized that business with $156,000 in stock in Fargo Insurance which he had at the time of the remarriage. The trial court found that Roger is the main principal in the management and success of First Realty, Inc. Although the corporation has approximately 20 real estate salesmen, the income to Roger as sole stockholder is largely dependent upon his role as manager. The court determined that lending institutions rely heavily upon Roger's personal integrity, abilities, management, and property investments in financially backing the corporation in its business. First Realty, Inc., has recently had a name change to Coldwell Banker First Realty, Inc., because of franchise real estate connections that

---

1. The trial court determined that while "[s]he has no education or special training beyond high school; ... she has abilities because of her background, prior experience, intelligence and her personality in the field of selling. She could become gainfully employed in sales jobs including real estate sales. She has not been self motivated to seek gainful employment, largely because the marital income was adequate."

did not result in a corporate ownership change.

Testimony was presented during the trial concerning the value of Roger's realty corporation, First Realty, Inc. In placing a value upon corporate property, Roger relied upon the corporate records made by an accountant. Dorothy sought to place a value upon the corporation by appraising only various properties of the corporation. The trial court determined that without an appraisal of all the corporate assets and liabilities, such individual appraisals by Dorothy were meaningless. The court held that Dorothy had failed to show by a preponderance of the evidence that the corporation valuation was not correct. The court stated that it could not rely upon isolated appraisals of one or two items as a basis to challenge corporate records, particularly when such accounting of the corporation was done by certified public accountants following usual accounting practices.

At the time of the second marriage, Dorothy and Roger had each accumulated real and personal property in the amounts as follows: Dorothy had $35,116 in assets; and Roger had a net worth of $287,179.

The trial court considered the *Ruff-Fischer* guidelines in making a distribution of the parties' property.[2] The court awarded Roger property valued at $786,680 and ordered Roger to pay $279,200 in obligations. The court used the following formula in arriving at Roger's net property distribution: The assets given to Roger by the court ($786,680) less obligations the court ordered Roger to pay ($279,200) and less property owned by Roger at the time of remarriage ($287,179) equals a net distribution of $220,299.

The trial court awarded the marital home worth $160,000 to Roger because he brought it into the second marriage and because it was Roger's "pride and joy in life and fits into his life style as a golfer." Roger testified at trial that the marital home and adjoining country club facilities were used extensively for business purposes.

The court awarded Dorothy property as follows: (1) a condominium valued at $74,000; (2) personal property valued at $64,-

2. In the trial court's conclusions of law the court stated its reasoning behind its property-distribution decision:

"This Court has made a distribution of property in the Findings of Fact in harmony with the Ruff-Fischer guidelines. *Ruff vs Ruff*, 78 N.D. 775, 52 NW2d 107 (1952). *Fischer vs Fischer*, 139 NW2d 845 (ND 1966). This Court has considered the difference in ages of 9 years as a significant factor in arriving at the earning potential. Dorothy should seek employment and is capable of getting employment. Her spousal support is interwoven with interest on her division of property; however the interest rate is higher than the usual interest rate. A transfer of title to real estate (other than the marital home) would cause income tax liability as a capital gain, causing less value of distribution to both parties. The earning capacities of the respective parties are disproportionate.

"In distribution this Court considered the duration of the marriage of this second marriage only.

"This Court believes that the station in life of both parties will be the same substantially after the marriage as before the marriage. The station in life is high economically so that it exceeds the usual basic necessities of the parties.

"Fault or conduct of either party is not considered as an element under the Ruff-Fischer guidelines.* It was never urged by either party.

"Circumstances and necessities of each are considered. Their health and physical condition are equal. Ages of the parties creates a factor in determining the duration of the spousal support.

"The financial circumstances as shown by the property owned is considered. The income producing property interwoven into the financial affairs of Coldwell Banker are left with Roger to avoid a disruption of his earning capacities and Dorothy is vested with money in lieu of property. The entire proposal is geared to the obvious requirement of the corporation continuing to produce a large salary to Roger.

"The parties have no major disagreement as to the value of the property owned individually or by the corporation and this Court has considered the value of such property as an element under the Ruff-Fischer guidelines.

"This Court carefully considered the element of whether the property was accumulated before or during the marriage."

* We assume by this statement the trial court meant it did not consider conduct for the purpose of this case rather than that fault could not be considered. See *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

740; and (3) a cash obligation to her from Roger valued at $116,500. The court used the following formula to determine Dorothy's net distribution: the assets awarded Dorothy by the court ($255,240) less the property she brought into the second marriage ($35,116) equals a net distribution of $220,124.

The trial court made the following statements concerning its decision to award Dorothy alimony:

"... this Court will give spousal support on a calculated certain amount largely derived from present corporate assets and income rather than from the dependency of Roger continuing to work even after 67 years of age....

.    .    .    .    .

"The problem of alimony is made more acute when there is an age difference of about 9 years. Roger is in retirement age. Should the Court order alimony on the premise that Roger continue working for the next 10 or 15 years? His solely owned corporation is apt to have less income if he should not actively participate in its affairs. Mortality tables give a man of 67 years an age expectancy of about 13 years. This Court believes that the establishment of an annuity would be the best solution to the problem. It will give security to Dorothy in that it is not terminated upon the death or retirement of Roger. It must be recognized that when Roger because of age is forced into retirement, his obligation for alimony is based on ability to pay."

In awarding Dorothy the $116,500 cash obligation to be paid to her by Roger as part of the property settlement the trial court stated:

"Roger shall pay to Dorothy the sum of $116,500.00 plus interest compounded yearly on the unpaid principal balance at the rate of 10 percent per annum and shall be paid in installments for 60 monthly payments of $1,000.00 each. The principal amount of $116,500.00 shall be considered as a property splitting and not alimony or spousal support. After 5 years, the entire balance of principal and

interest shall be due and payable in a balloon payment....

"The monthly payments shall be applied one-half to principal and one-half to interest accrued. The interest payments shall be construed as alimony. The alimony over a 5 year period would approximate $845.00 monthly during the 5 year period....

"The 5 years of alimony are considered by this Court in the nature of rehabilitative spousal support...."

In its findings of fact the trial court explained its reasoning for structuring the $116,500 cash obligation the way it did:

"... In 5 years Dorothy will have income from Social Security, accumulated interest, her condominium and a cash reserve, with no debts or mortgages....

"... This Court finds that the investments of the marriage have no substantial cash flow income in that income is put back into payments on principal. The home used by the daughter likewise produces no income due to a family commitment. During the 5 year period after which time Roger will be 72 years of age, he will be burdened with the payments not now existing such as the mortgage on Dorothy's condominium and Cadillac automobile. These payments together with the cash payments are necessarily paid from earnings after income taxes. Except for the interest earnings, the payments in cash and payments on the condominium and Cadillac automobile are not subject to income taxes to her. The benefit of the distribution of property to Dorothy is postponed for 5 years (with interest) and this is true also of the distribution of property to Roger. To make an equitable distribution in cash to Dorothy at this time is impossible in that no such cash exists. To give Dorothy an interest in the revenue producing real estate would not result in cash flow to her instantly. The arrangement decided by this Court is dependent on earnings of Roger in the future years. Because of the hostility between the parties this Court deems it inappropriate to vest real

estate interests in the income producing property to Dorothy. It would according to the evidence also result in the reduction of income to Coldwell Bankers and ultimately to Roger."

The trial court also ordered Roger to pay $1,500 to Dorothy to assist her in paying her legal fees.

On appeal Dorothy challenges that portion of the divorce judgment concerning property division and alimony. Dorothy argues that the trial court's division of the marital property was inequitable and clearly erroneous and that the limitations on the award of alimony are likewise clearly erroneous.

In *Graves v. Graves*, 340 N.W.2d 903, 906 (N.D.1983), this court summarized the rules of law applicable in reaching an equitable division of marital property:

"Section 14–05–24, N.D.C.C., requires a trial court to distribute the parties' property 'as may seem just and proper.' *Winter v. Winter*, 338 N.W.2d 819 (N.D. 1983). The ultimate objective is to make an equitable division. *Fraase v. Fraase*, 315 N.W.2d 271 (N.D.1982); *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979). An equitable distribution is not necessarily an equal distribution. *Williams v. Williams*, 302 N.W.2d 754 (N.D.1981); *Carr v. Carr*, 300 N.W.2d 40 (N.D.1980). There are no set rules for distribution because what is equitable depends upon the circumstances in a particular case. *Tuff v. Tuff*, 333 N.W.2d 421 (N.D.1983); *Clark v. Clark*, 331 N.W.2d 277 (N.D. 1983). A trial court's findings of fact will not be set aside unless they are clearly erroneous, which means that this court is left with a definite and firm conviction that a mistake has been made.

Rule 52(a), N.D.R.Civ.P.; *Winter v. Winter, supra; Clark v. Clark, supra.*

"To determine whether or not the property distribution is clearly erroneous, we need to understand the trial court's rationale for its decision. *Urlaub v. Urlaub*, 325 N.W.2d 234 (N.D.1982). In order to make an equitable distribution, a trial court must first determine the net value of the property owned by the parties. *VanRosendale v. VanRosendale*, 333 N.W.2d 790 (N.D.1983); *Urlaub v. Urlaub, supra; Williams v. Williams, supra; Nastrom v. Nastrom*, 262 N.W.2d 487 (N.D.1978), 276 N.W.2d 130 (N.D.1979), and 284 N.W.2d 576 (N.D. 1979). The trial court must find the net value of the property *before* employing the guidelines for distribution established in *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and in *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). *Williams v. Williams, supra.*" [Emphasis in original.]

As part of Dorothy's argument concerning division of property, Dorothy first contends that the trial court used an incorrect accounting formula in determining Roger's net worth. The thrust of Dorothy's argument is that the court erred by not distributing to her some of the property that Roger brought into the second marriage.

■ Under Section 14–05–24, N.D. C.C., the court is required to consider all of the property accumulated by the parties, both jointly and individually owned. See *Hoge v. Hoge*, 281 N.W.2d 557 (N.D.1979); *Bellon v. Bellon*, 237 N.W.2d 163 (N.D. 1975).[3]

We stated in *Anderson v. Anderson*, 368 N.W.2d 566, 568 (N.D.1985):

In this case, although the trial court used a variation of the accounting formula described in *Hoge*, we can nevertheless determine the value of the property. Due to the short duration of the second marriage, we conclude that in this case the court acted properly in using a modified version of the *Hoge* accounting formula. We note that trial courts should normally use the *Hoge* formula in making a determination as to the net worth of marital property.

---

3. In *Hoge*, 281 N.W.2d at 561, we also declared that "When there is evidence upon which the court can arrive at an equitable property division, justice requires use of the elementary accounting equation of assets minus liabilities equals total equity. From this equation it is possible to determine the net worth of the marital property. See *Nastrom v. Nastrom*, 262 N.W.2d 487 (N.D.1978)."

"The *Ruff-Fischer* guidelines give the trial court sufficient flexibility to consider the source of the property as one factor in arriving at an equitable distribution. [Citation omitted.] However, the separate property, whether inherited or otherwise, must initially be included in the marital estate and is subject to distribution as may be necessary to achieve an equitable distribution."

The trial court, in distributing the marital property, initially determined the value of all the property owned by the parties. After assigning specific values to each item of real and personal property, and considering which party had brought that item into the second marriage, the court followed the *Ruff-Fischer* guidelines in division of the property. In essence, what the court accomplished by making specific findings as to the value of each item of property and then stating the accompanying liabilities was to make an indirect finding of the parties' net worth. We believe that the court properly followed the *Ruff-Fischer* guidelines in considering the property each party brought into the second marriage and awarding that property to its previous owner.

Dorothy contends next that the trial court made mathematical errors and relied upon insufficient evidence in determining the values of the marital property. After review of the record we find no merit in her argument. We believe the trial court had sufficient evidence before it to make the value determinations it did on the marital property, including the value of the corporate assets. The court relied upon corporate financial statements prepared by an accountant. The trial court did not abuse its discretion in relying upon such records instead of relying upon isolated appraisals of a few corporate assets. Dorothy failed to present an alternative method of evaluating the corporate assets on the whole and we conclude that the trial court did not make a mistake in evaluating the corporate assets.

Dorothy also contends that the trial court erred in awarding the marital home to Roger. The record provides substantial evidence to support the trial court's decision to award Roger the marital home. The home belonged to Roger at the time of the second marriage. Roger's equity in the home was substantial and because Roger's personal financial status played an important role in maintaining preferred financing arrangements, it was important for Roger to keep ownership of the home. Roger also testified that the home and adjacent country club were important for use in furthering business contacts with his sales personnel. We conclude that there was sufficient evidence presented to the trial court to justify its award of the marital home to Roger.

Dorothy asserts that the trial court erred in not assigning good will to the corporation. The testimony presented during trial indicated that the corporation had no good will in that if the business were sold there would be no value over and above the value of the corporation's assets. We have reviewed the record and conclude that the trial court was not mistaken in its finding that the corporation had no good will.

Dorothy further argues that the trial court erred by failing to award her permanent alimony in an amount that would pay her reasonable living expenses.

In *Seablom v. Seablom*, 348 N.W.2d 920, 924 (N.D.1984), this court stated: "Spousal support may be for a definite period of time to aid a disadvantaged party in acquiring new skills or it may be permanent to provide maintenance for a party incapable of rehabilitation." See *Bullock v. Bullock*, 354 N.W.2d 904 (N.D.1984). Section 14–05–24, N.D.C.C., authorizes the trial court "to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively." The trial court has discretion in making a determination of a just award and such award depends upon the facts and circumstances of each case. See *Bullock v. Bullock, su-*

*pra; Briese v. Briese,* 325 N.W.2d 245 (N.D.1982).

■ After reviewing the record before us, we are not of the opinion that the district court's findings concerning alimony are clearly erroneous. The court viewed the temporary alimony as rehabilitative spousal support. The court found that Dorothy is capable of working and thus expected Dorothy to be gainfully employed to supplement her income. The court determined that in five years Dorothy would have "income from Social Security, accumulated interest, her condominium and a cash reserve, with no debts or mortgages." We are not left with a definite and firm conviction that a mistake has been made.

Dorothy argues that the trial court erred in delaying part of her property award for five years and that the court further erred by not finding the present value of the $116,500 property award.

In *Tuff v. Tuff,* 333 N.W.2d 421 (N.D. 1983), we reversed a trial court's decision as to the property distribution because we were unable to determine from the trial court's findings the gross or net amount of the parties' assets and the findings of fact and conclusions of law left us with no indication of the trial court's rationale in distributing the property.

As part of the property distribution the trial court in *Tuff* had made a $200,000 cash award to the wife with $150,000 to be paid in installments of $15,000 each year for ten years. No interest on the payments was awarded. We stated in *Tuff,* 333 N.W.2d at 424, our concern over the manner of payment of the cash award:

"If we were to assume that a lump-sum award of $200,000 to Lore was equitable, we would, nevertheless, be concerned about the manner of payment. The award was obviously a form of property division rather than spousal support because the trial court specifically indicated it was not awarding alimony to either party. See *Urlaub, supra; Eberhart v. Eberhart,* 301 N.W.2d 137 (N.D. 1981). However, the award contains none of the income-producing assets of

the parties. Those were awarded to Dennis. Only $50,000 of the $200,000 was to be paid immediately and Lore therefore does not have the total sum to invest in order that she might obtain interest thereon, thus converting the payment into income-producing property. Rather, $150,000 of the sum is payable in installments of $15,000 per year over a period of ten years with no interest. It thus appears to us that the sum would need to be discounted in determining whether or not, at the time of the decree, Lore received an equitable distribution of the property. See *Sanford v. Sanford,* 301 N.W.2d 118 (N.D.1981)."

■ We have reviewed the district court's findings of fact concerning the cash-obligation award and conclude that the facts in this case are clearly distinguishable from those present in *Tuff.* Here, as in *Tuff,* the trial court made a delayed cash award to one of the parties; however, the trial court in this case provided that Dorothy was to receive ten percent interest on the $116,500 cash award. The trial court stated in its findings that half of the $1,000 payment per month was to be interest ($500) and that half ($500) was to be paid from the principal amount of $116,500. The court then stated that the $500 interest was to be construed as alimony and the $500 principal as property. The trial court, after considering the tax consequences, in effect combined property and spousal support for the advantage of both parties. Although this may be a somewhat novel approach, we cannot say that we are left with a definite and firm conviction that a mistake has been made. Rule 52(a), N.D. R.Civ.P.

■ The trial court was aware that it could not make an immediate distribution of cash to Dorothy because "no such cash exist[ed]." The court also based its decision to delay payment on its understanding that to require Roger to liquidate assets so that he might be able to pay Dorothy an immediate sum of cash would in effect reduce his ability to successfully operate

his realty business. We believe that under the circumstances the trial court could properly delay the payment of the $116,500 award.

The judgment is affirmed.

ERICKSTAD, C.J., MESCHKE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

PEDERSON, Surrogate Judge, participated in place of LEVINE, J., disqualified.