# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2020 ND 40

| | |
|---|---|
| Kyle Vetter, | Plaintiff and Appellant |
| v. | |
| Michelle Vetter, | Defendant and Appellee |
| and | |
| State of North Dakota, | Statutory Real Party in Interest |

No. 20190151

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Todd D. Kranda and Alex Kelsch, Mandan, ND, for plaintiff and appellant; submitted on brief.

Irvin B. Nodland, Bismarck, ND, for defendant and appellee; submitted on brief.

**VandeWalle, Justice.**

[¶1]   Kyle Vetter appealed from a district court judgment awarding primary residential responsibility of the parties' minor daughter, B.L.V., to Michelle Vetter and dividing the parties' assets and debts. We affirm.

I

[¶2]   Kyle Vetter and Michelle Vetter began dating in 1990 when they were both in high school. After graduating high school, Kyle Vetter and Michelle Vetter moved to several locations around the United States for various job opportunities. The parties were married and settled in Bismarck in 1998. In 2009, B.L.V. was born.

[¶3]   In 2016, Michelle Vetter commenced a divorce action against Kyle Vetter. The parties stipulated to dismiss that action. In 2017, Kyle Vetter commenced the current divorce action. Shortly thereafter, Michelle Vetter was charged with child abuse. In August, 2018, a jury found Michelle Vetter guilty of child abuse. This Court affirmed Michelle Vetter's conviction. *State v. Vetter*, 2019 ND 262, 934 N.W.2d 543.

[¶4]   After Kyle Vetter filed for divorce, the district court appointed a parenting investigator. The parenting investigator completed her report in October 2018. In her report, the parenting investigator made a number of specific recommendations, which were, in part, relied on by the district court in making its custody determination.

[¶5]   In March 2019, a two day divorce trial was held. At trial, the parenting investigator testified to the findings and recommendations in her report. Additionally, both Kyle Vetter and Michelle Vetter testified on the incident that led to Michelle Vetter's child abuse conviction. Michelle Vetter did not testify during her criminal trial, and she offered a much different account on the incident than what was offered by Kyle Vetter.

[¶6]   In April 2019, the district court issued a memorandum decision, findings of fact and conclusions of law, and ordered judgment. The court awarded primary residential responsibility of B.L.V. to Michelle Vetter. Regarding the parties' assets and debts, the court found the parties' marriage was a long term marriage and awarded Michelle Vetter 38.3% of the marital estate and Kyle Vetter 61.7% of the marital estate. And to prevent a substantial disparity in the division of assets, the court required Kyle Vetter make an equalization payment to Michelle Vetter in the amount of $135,294.57.

## II

[¶7]   On appeal, Kyle Vetter argues the district court erred in awarding primary residential responsibility to Michelle Vetter because its findings on factors c, d, and e under N.D.C.C. § 14-09-06.2(1) were clearly erroneous and because the court's findings on factor j should have been afforded greater weight.

[¶8]   "We exercise a limited review of primary residential responsibility decisions." *Zuo v. Wang*, 2019 ND 211, ¶ 11, 932 N.W.2d 360 (citing *Grasser v. Grasser*, 2018 ND 85, ¶ 17, 909 N.W.2d 99). "A district court's decision on primary residential responsibility is a finding of fact and will not be overturned on appeal unless clearly erroneous." *Id*. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if this Court, on the entire record, is left with a definite and firm conviction a mistake has been made." *Id*. "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial [primary residential responsibility] decision merely because we might have reached a different result." *Mowan v. Berg*, 2015 ND 95, ¶ 5, 862 N.W.2d 523 (quoting *Wolt v. Wolt*, 2010 ND 26, ¶ 7, 778 N.W.2d 786).

## A

[¶9]   Kyle Vetter contends the district court's findings on factor c are clearly erroneous because its findings are "based on a backward looking view." Best-interest factor c considers "[t]he child's developmental needs and the ability of

each parent to meet those needs, both in the present and in the future." N.D.C.C. § 14-09-06.2(1)(c). We have previously held district courts may give weight to a parent's role as primary caretaker in making custody decisions. *See Heinle v. Heinle*, 2010 ND 5, ¶ 11, 777 N.W.2d 590. The district court found Michelle Vetter was the primary caretaker of B.L.V. leading up to the divorce because of Kyle Vetter's work schedule. The district court, relying on the parenting investigator's report, also found B.L.V. is learning to develop relationships and cooperate with adults and is establishing foundations for academic and athletic skills. The parenting investigator stated children B.L.V.'s age identify and model the activities of the parent who is the same sex as the child. Therefore, the court found Michelle Vetter could better meet B.L.V.'s developmental needs. Because Michelle Vetter was the primary caretaker of B.L.V. leading up to the divorce and could better meet B.L.V.'s developmental needs, the district court found factor c favored Michelle Vetter. The court's finding is supported by the record and the evidence presented at trial. The district court's findings on factor c are not clearly erroneous.

B

[¶10] Under N.D.C.C. § 14-09-06.2(1)(j):

> In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, residential responsibility for a child may be awarded to a suitable third

3

person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards residential responsibility to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent residential responsibility. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14-07.1-01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.

"'Domestic violence' includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." N.D.C.C. § 14-07.1-01(2).

[¶11] "When credible evidence of domestic violence exists, it 'dominates the hierarchy of factors to be considered' when determining the best interests of the child under N.D.C.C. § 14-09-06.2." *Mowan*, 2015 ND 95, ¶ 8, 862 N.W.2d 523 (quoting *Datz v. Dosch*, 2013 ND 148, ¶ 18, 836 N.W.2d 598). "Even if the evidence of domestic violence does not trigger the statutory presumption under N.D.C.C. § 14-09-06.2(1)(j), the violence must still be considered as one of the factors in deciding primary residential responsibility." *Id.* (quoting *Law v. Whittet*, 2014 ND 69, ¶ 17, 844 N.W.2d 885).

[¶12] "When a district court addresses whether evidence of domestic violence triggers the presumption under that statute, we require specific findings and conclusions regarding the presumption so we are not left guessing as to the court's rationale regarding the application of the presumption." *Id.* at ¶ 9 (quoting *Gietzen v. Gabel*, 2006 ND 153, ¶ 9, 718 N.W.2d 552). "A trial court cannot simply ignore evidence of family abuse, but must make specific findings on evidence of domestic violence in making its decision on primary residential responsibility." *Id.* (quoting *Law*, 2014 ND 69, ¶ 17, 844 N.W.2d 885). "The district court's findings should be sufficiently detailed to allow this Court to understand the basis for its decision." *Id.* (quoting *Boeckel v. Boeckel*, 2010 ND 130, ¶ 16, 785 N.W.2d 213).

4

[¶13] After hearing the testimony of both parties at trial, the district court found the testimony painted a more complete picture of the incident that led to Michelle Vetter's conviction for child abuse. Based on the parties' testimony, the district court found Michelle Vetter's child abuse conviction was not sufficient evidence to trigger the rebuttable presumption of domestic violence under N.D.C.C. § 14-09-06.2(1)(j). The court reasoned that a presumption of domestic violence arises under § 14-09-06.2(1)(j) when a perpetrator inflicts "serious bodily injury," yet Michelle Vetter could be charged and convicted of child abuse without inflicting "serious bodily injury." The court explained, therefore, the alleged conduct that led to the conviction did not "meet the strict definition of 'domestic violence'" under § 14-09-06.2(1)(j). Although the child abuse conviction satisfies the definition of "domestic violence" under § 14-09-06.2(1)(j) because that definition requires only "bodily injury," the district court was correct insofar as it found that such a conviction does not necessarily satisfy the threshold to trigger the presumption, which requires credible evidence of "serious bodily injury." Moreover, the court explicitly stated the conviction was not irrelevant and found factor j favored Kyle Vetter.

[¶14] Aside from the incident leading to Michelle Vetter's conviction, the court received testimony relating to other incidents of alleged domestic violence. The testimony received by the court was conflicting and imprecise. The court found the testimony on the other alleged incidents of domestic violence was not credible evidence that there existed a pattern of domestic violence within a reasonable time proximate to the proceeding.

[¶15] The district court considered the incident that led to Michelle Vetter's conviction and the other alleged incidents of domestic violence. The court ultimately found factor j favored Kyle Vetter. The court weighed factor j and the evidence of domestic violence and determined, based on the evidence as a whole, it was in B.L.V.'s best interests for Michelle Vetter to receive primary residential responsibility. After a review of the entire record, we cannot conclude the district court's findings were induced by an erroneous view of the law or were unsupported by the evidence in the record, and we are not left with a definite and firm conviction a mistake has been made. The district court's

findings on factor j are not clearly erroneous and were afforded appropriate weight and consideration.

C

[¶16] Kyle Vetter's remaining arguments on factors d and e are little more than asking this Court to reweigh the evidence. The district court made multiple findings of fact in accordance with the law and supported by the record. And after reviewing the entire record, we are not left with a definite and firm conviction a mistake has been made. The district court's findings are not clearly erroneous, and the court did not err in awarding Michelle Vetter primary residential responsibility of B.L.V.

III

[¶17] Kyle Vetter argues the district court erred by ordering he make an equalization payment to Michelle Vetter, and thereby inequitably divided the parties' assets and debts. This Court will not reverse the district court's decision related to property distribution unless the findings are clearly erroneous. *Berg v. Berg*, 2018 ND 79, ¶ 6, 908 N.W.2d 705.

[¶18] Section 14-05-24(1), N.D.C.C., requires the district court make an equitable division of the parties' marital estate. *Swanson v. Swanson*, 2019 ND 25, ¶ 6, 921 N.W.2d 666 (citing *Rebel v. Rebel*, 2016 ND 144, ¶ 7, 882 N.W.2d 256). All assets, whether separately obtained or inherited property, are to be considered part of the marital estate. *Bladow v. Bladow*, 2003 ND 123, ¶ 6, 665 N.W.2d 724. After all assets and debts have been included, the district court is to apply the *Ruff–Fischer* guidelines and make an equitable division of the marital estate. *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255. "A property distribution need not be equal to be equitable, but the district court must explain any 'substantial disparity' in its distribution." *Swanson*, at ¶ 9 (citing *Berg*, 2018 ND 79, ¶ 7, 908 N.W.2d 705).

[¶19] There is no set formula or method for dividing a marital estate, but the trial court must equitably divide the property based upon the particular circumstances of each case. *Swanson*, 2019 ND 25, ¶ 9, 921 N.W.2d 666;

6

*Horner v. Horner*, 2004 ND 165, ¶ 12, 686 N.W.2d 131. An equal division of marital property is a logical starting point in a long-term marriage. *Linrud v. Linrud*, 1998 ND 55, ¶ 7, 574 N.W.2d 875; *see Swanson*, at ¶ 9. While we have said a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage, *Horner*, at ¶ 12, marriages of longer durations generally support an equal distribution of property. *Lizakowski v. Lizakowski*, 2017 ND 91, ¶ 12, 893 N.W.2d 508 (citing *Kosobud v. Kosobud*, 2012 ND 122, ¶ 6, 817 N.W.2d 384). However, duration of a marriage is only one factor of the *Ruff–Fischer* guidelines and is only one factor to be considered in a distribution of marital property. *Lill v. Lill*, 520 N.W.2d 855, 857 (N.D. 1994).

[¶20] At the time of trial, the parties had been married approximately twenty years and had been together approximately twenty-eight years. The district court found this was a long-term marriage. The court's finding was not clearly erroneous. *See Ulsaker v. White*, 2006 ND 133, ¶ 14, 717 N.W.2d 567 (affirming finding that sixteen-year marriage was a long-term marriage). Additionally, the court found neither party brought any property into the marriage. The court awarded Michelle Vetter 38.3% of the marital estate and Kyle Vetter 61.7% of the marital estate. To prevent a substantial disparity in the division of assets, the court required Kyle Vetter make an equalization payment to Michelle Vetter in the amount of $135,294.57. Given this was a long-term marriage in which neither party brought any property into the marital estate, the equalization payment ordered by the district court was not inequitable. Moreover, Kyle Vetter himself testified at trial that he was "okay" with an equalization payment. The district court's division of the parties' assets and debts was not clearly erroneous.

IV

[¶21] The district court judgment is affirmed.

[¶22] Gerald W. VandeWalle
  Daniel J. Crothers
  Lisa Fair McEvers
  Jerod E. Tufte
  Jon J. Jensen, C.J.

7