# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 94

Suzanne Jane Nagle,                                    Plaintiff and Appellee

v.

Gene Murray Nagle,                                     Defendant and Appellant

## No. 20240260

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Bahr, Justice, in which Chief Justice Jensen and Justices McEvers and Tufte joined. Justice Crothers filed a specially concurring opinion. Justice McEvers filed a concurring opinion.

Theresa L. Kellington, Bismarck, ND, for plaintiff and appellee.

Justin D. Hager, Bismarck, ND, for defendant and appellant.

**Nagle v. Nagle**
**No. 20240260**

**Bahr, Justice.**

[¶1]   Gene Nagle appeals from a divorce judgment. He argues the district court erred by treating the parties' second marriage as a long-term marriage and by finding a near equal distribution of the parties' marital estate was fair and equitable. Gene Nagle also claims the court erred in its property division because the court awarded Suzanne Nagle property that she previously waived her rights to in their first divorce. Suzanne Nagle argues Gene Nagle did not timely appeal the court's denial of his motion in limine and is precluded from appealing issues decided in reliance on *Nelson v. Nelson*, 1998 ND 176, 584 N.W.2d 527. We conclude the court's equitable distribution of the marital estate under the *Ruff-Fischer* guidelines is clearly erroneous. We reverse and remand for further proceedings consistent with this opinion.

I

[¶2]   The parties were married and divorced twice. They first married in August 1982, and stipulated to a divorce in December 2018. They have two grown children. In December 2017, Gene Nagle had back surgery that left him disabled, and he pursued a medical malpractice action and an appeal of disability benefits. Neither action was completed when the parties first divorced. Under the terms of the first divorce, Gene Nagle received any proceeds from both claims. Gene Nagle settled the medical malpractice action but testified he could not disclose the amount he received. Gene Nagle receives disability benefits which will end in June 2025.

[¶3]   The parties renewed their relationship roughly three and a half years after their divorce. Suzanne Nagle was employed in a variety of different occupations between the parties' first divorce and resuming their relationship. She was working in a pharmacy department in May 2022 but quit before the remarriage to allow the parties to travel. The parties moved in together in June or July 2022, remarried in August 2022, and physically separated on February 2, 2023, maintaining separate residences from that point forward. When they were back

1

together, Gene Nagle paid most of the couple's expenses, including payment for improvements to Suzanne Nagle's property. Suzanne Nagle initiated the second divorce action on June 12, 2023.

[¶4] Before trial, Gene Nagle filed a motion in limine arguing, in relevant part, that a psychiatric mental health nurse practitioner should not be allowed to testify about the parties' first marriage because the evidence was irrelevant and barred by res judicata. Suzanne Nagle argued the district court must consider the parties' first marriage and all relevant pre-divorce conduct of the parties. The court denied the motion as it was "currently presented"—essentially reserving its ruling until trial—and, relying on *Nelson*, stated it would consider the totality of the parties' relationship for property distribution purposes.

[¶5] At the time of trial, Suzanne Nagle was 62 years old, was not working, and had not worked since the two remarried. Suzanne Nagle testified she would begin seasonal employment at a garden center on May 1, 2024, and would provide daycare for her grandchildren. Gene Nagle was 65 years old and had not worked since December 2017 because he was disabled. During trial, the parties agreed to the district court taking judicial notice of their first divorce settlement agreement and the resulting findings of facts, conclusions of law, order for judgment, and judgment.

[¶6] The district court made findings under the *Ruff-Fischer* guidelines and concluded an equal distribution of the marital estate was fair and equitable. Each party was generally awarded the property and associated debt they brought into the second marriage—Gene Nagle was awarded a net marital estate of $1,526,907, and Suzanne Nagle was awarded a net marital estate of $1,063,535. Gene Nagle was ordered to make a cash payment of $231,500 to Suzanne Nagle to equalize the marital estate. Suzanne Nagle requested spousal support, which the court denied. Gene Nagle timely appealed the court's property distribution.

II

[¶7] Suzanne Nagle argues Gene Nagle did not timely appeal the district court's order denying his motion in limine. Therefore, she asserts, he cannot now argue issues related to the *Nelson* decision.

2

[¶8]   Orders on motions in limine are preliminary and "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." *Nesvig v. Nesvig*, 2006 ND 66, ¶ 31, 712 N.W.2d 299. "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id.* "Generally, interlocutory orders in an action are merged into the final judgment and may be reviewed on appeal of that judgment." *Tibbetts v. Dornheim*, 2004 ND 129, ¶ 11, 681 N.W.2d 798. "Upon an appeal from a judgment, the court may review any intermediate order or ruling which involves the merits and affects the judgment appearing upon the record." N.D.R.App.P. 35(a)(2).

[¶9]   Because the district court's order was interlocutory, Gene Nagle was not required or permitted to appeal from the order denying his motion in limine. *See* N.D.R.Civ.P. 54(b) (explaining that if a district court "does not end the action as to any of the claims," the order is not appealable because it is not a final judgment and "may be revised at any time before the entry of a judgment"). The order merged into the divorce judgment and may be reviewed by this Court on appeal. Therefore, Gene Nagle is not precluded from arguing on appeal the court erred in its application of *Nelson*.

### III

[¶10] Gene Nagle argues the district court erred by treating the parties' second marriage as long term, the court's equal distribution of the marital property is clearly erroneous, and Suzanne Nagle is being allowed to collaterally attack the property distribution from the first marriage.

### A

[¶11] When granting a divorce, a district court is required to equitably distribute the divorcing parties' property and debts under N.D.C.C. § 14-05-24(1). Our standard for reviewing the court's distribution of the marital estate is well established:

> We will not reverse a district court's findings on valuation and division of marital property unless they are clearly erroneous. A

finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations.

*Stephenson v. Stephenson*, 2011 ND 57, ¶ 7, 795 N.W.2d 357 (cleaned up).

B

[¶12] The dispositive issue on appeal is whether the district court's equitable distribution of the marital estate under the *Ruff-Fischer* guidelines is clearly erroneous. We conclude it is.

[¶13] Under N.D.C.C. § 14-05-24(1), "[w]hen a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties." The court first determines the value of the marital estate. *Stephenson*, 2011 ND 57, ¶ 9. The court then considers the well-established *Ruff-Fischer* guidelines, which include:

> [T]he respective ages of the parties, their earning ability, *the duration of the marriage* and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by *the property owned at the time*, its value at the time, its income-producing capacity, if any, *whether accumulated before or after the marriage, and such other matters as may be material.*

*Ceynar v. Ceynar*, 2025 ND 53, ¶ 5, 18 N.W.3d 613. (emphasis added) (quoting *Swanson v. Swanson*, 2019 ND 25, ¶ 6, 921 N.W.2d 666). "In making an equitable distribution of marital property, a court must consider all of the parties' assets." *Id.* (quoting *Swanson*, ¶ 6). "We have repeatedly held that separate property, whether inherited or otherwise, must initially be included in the marital estate, and have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse." *Id.* (quoting

4

*Swanson*, ¶ 9). "The origin of the property is only one factor to consider under the *Ruff-Fischer* guidelines, even if the property was acquired before the marriage or inherited." *Id.* (quoting *Hitz v. Hitz*, 2008 ND 58, ¶ 14, 746 N.W.2d 732); *see also Stephenson*, 2011 ND 57, ¶ 22 ("A court may consider the source of property when dividing the marital estate, but all property, regardless of its source, must be included in the estate for equitable distribution.").

[¶14] Similarly, the "duration of the marriage" is only one factor the district court must consider in determining an equitable division of the marital estate under the *Ruff-Fischer* guidelines. *Ceynar*, 2025 ND 53, ¶ 5. "Generally, a long-term marriage supports an equal division of marital assets, but the division need not be equal to be equitable. In a short-term marriage, the district court may distribute property based on what each party brought into the marriage." *Buchholz v. Buchholz*, 2022 ND 203, ¶ 25, 982 N.W.2d 275 (quoting *Paulson v. Paulson*, 2021 ND 32, ¶ 24, 955 N.W.2d 92); *see also Vetter v. Vetter*, 2020 ND 40, ¶ 19, 938 N.W.2d 417 ("An equal division of marital property is a logical starting point in a long-term marriage. While we have said a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage, marriages of longer durations generally support an equal distribution of property." (cleaned up)). Irrespective of whether the marriage is long or short term, the division of property must be equitable. *Walden v. Walden*, 2025 ND 32, ¶ 21, 17 N.W.3d 521 ("In a short-term marriage, the court may return to the parties what they brought into the marriage, but the division of property and debt must be equitable.").

1

[¶15] Here, the district court considered the *Ruff-Fischer* guidelines. Relevant to our disposition, the court found "this case involves a long-term first marriage and a short-term second marriage." It later stated, "Although their combined marriages are of long duration, the second marriage was extremely short." Considering the facts from both marriages, the court conducted a detailed analysis of the *Ruff-Fischer* guidelines. The court's *Ruff-Fischer* analysis strongly leaned toward Gene Nagle receiving more of the marital estate, not an equal division. Yet, despite its analysis and findings, the court equally divided the

5

marital property. The court appears to have done so because it combined the two marriages and treated them as a single long-term marriage. If that is the basis of the court's equal property division, the court's division of marital property is clearly erroneous because it is induced by an erroneous view of the law.

[¶16] The "duration of the marriage" factor is the length of the marriage being dissolved by the district court, irrespective of whether there was a prior marriage or marriages with the same party or another person. *See* N.D.C.C. § 14-05-01(2) ("Marriage is dissolved only: . . . 2. By a judgment of a court of competent jurisdiction decreeing a divorce of the parties."); N.D.C.C. § 14-05-02 ("The effect of a judgment decreeing a divorce is to restore the parties to the state of unmarried persons, but neither party to a divorce may marry except in accordance with the decree of the court granting the divorce.").

[¶17] In *Nelson*, this Court did not hold the Nelsons' second marriage was a long-term marriage; rather, it emphasized that the district court "must equitably divide the property based upon the circumstances of the particular case." 1998 ND 176, ¶ 6. In *Nelson*, those circumstances included that, although "the second marriage was short," the parties began living together again three months after their divorce, meaning "the property of their marital estate remained intact." *Id.* ¶¶ 3, 8. This Court concluded the district court should have considered these facts "in making an equitable division of the property." *Id.* ¶ 8. This Court also found the court's "finding Joyce Nelson made no contribution to the accumulation of the retirement benefits since the 1991 divorce is without support in the record and is clearly erroneous." *Id.*

[¶18] *Stephenson* also did not hold the parties' first marriage had to be considered when determining the length of the second marriage, which was itself long term. 2011 ND 57, ¶¶ 3-4 (remarried in 1997 and divorced in 2008). This Court appears to have recognized the second marriage as long term, stating, "Generally a long-term marriage supports an equal division of the marital estate, but a property division does not need to be equal to be equitable and a substantial disparity must be explained." *Stephenson*, ¶ 9. This Court reversed the district court in *Stephenson* because there was no evidence in the record to support the court's finding about the value of Daniel Stephenson's retirement

6

accounts and the court did not adequately explain the basis for its decision. *Id.* ¶¶ 14, 17.

[¶19] Neither *Nelson* nor *Stephenson* held the parties' prior marriage should be combined with the parties' second marriage to determine the length of the parties' second marriage. *Nelson* and *Stephenson* also did not hold that the analysis under the *Ruff-Fischer* guidelines changes because the parties were previously married to each other. Rather, as required under the *Ruff-Fischer* guidelines, the length of the second marriage, short or long term, was one factor considered when determining the equitable division of the marital property.

[¶20] *Lill v. Lill*, 520 N.W.2d 855 (N.D. 1994), and *Linn v. Linn*, 370 N.W.2d 536 (N.D. 1985), are instructive. In *Lill*, the parties "were married to each other for the second time on February 14, 1992. They separated in August 1992, and were divorced in December 1993." 520 N.W.2d at 856. Relevant to this case, on appeal David Lill argued the district court erred in awarding Sandra Lill $5,000 in its division of property. *Id.* at 857. The crux of David Lill's argument was that it "seems unfair" to award Sandra Lill $5,000 "following a marriage of such short duration." *Id.* We explained, "In a short-term marriage, it is entirely proper to award property that restores the parties to their premarital status, should the circumstances warrant." *Id.* The court found Sandra Lill "brought savings of approximately $4500 to the marriage, which were reduced to $400 at the time of the divorce hearing, and accumulated a debt of approximately $3,500 as a result of the marriage." *Id.* Based on that finding, we concluded the court's award of $5,000 to Sandra was not clearly erroneous. *Id.* We later noted, "[B]ecause of the short duration of the marriage, the marital estate was divided to return the parties to their economic status before the marriage." *Id.* at 858.

[¶21] *Linn* also involved a remarriage. The parties' first marriage lasted approximately 22 years (May 14, 1953, through February 16, 1975). 370 N.W.2d at 538. They "were remarried on September 24, 1976. Dorothy commenced an action for divorce in June of 1979; that action was dismissed in February 1981. Dorothy initiated this action for divorce in September of 1982[.]" *Id.* In distributing the marital property, the district court considered the duration of the second marriage only and what the parties brought into the second marriage.

7

*Id.* at 539-40. On appeal, Dorothy Linn challenged, among other things, the portion of the divorce judgment concerning property division. *Id.* at 541. She argued the court erred "by not distributing to her some of the property that Roger [Linn] brought into the second marriage." *Id.* We noted "the short duration of the second marriage[.]" *Id.* at 541 n.3. Affirming the court's distribution of the marital property, we stated the court followed the *Ruff-Fischer* guidelines by determining the value of all the property owned by the parties, assigning specific values to each item of real and personal property, and considering which party brought that item into the second marriage. *Id.* at 542. We concluded "the court properly followed the *Ruff-Fischer* guidelines in considering the property each party brought into the second marriage and awarding that property to its previous owner." *Id.*

[¶22] Significantly, in both *Lill* and *Linn* the district courts and this Court only considered the duration of the parties' second marriage under the *Ruff-Fischer* guidelines. The district courts and this Court also considered the property each party brought into the second marriage; in neither case were the courts concerned with how the property was divided after the first marriage. *Nelson*, *Stephenson*, *Lill*, and *Linn* all stand for the proposition that the "duration of the marriage" factor under the *Ruff-Fischer* guidelines is the length of the marriage being dissolved by the district court, even when the parties were previously married.

[¶23] "No bright-line rule exists to determine whether a marriage is short or long term." *Hollingsworth v. Hollingsworth*, 2025 ND 8, ¶ 16, 16 N.W.3d 221. Here, the district court found the Nagles' "second marriage was extremely short." However, the court appears to have combined the parties' first and second marriages and treated them as a single long-term marriage in making its equitable distribution of the parties' property. If it did, that was legal error. The "duration of *the* marriage" refers to the marriage before the court and is determined irrespective of prior marriages.

[¶24] The above analysis does not impact or modify our cases stating, "When parties live together and then marry it is appropriate for the court to consider all of their time together in dividing the marital property." *Nelson*, 1998 ND 176, ¶ 7;

8

*see also Northrop v. Northrop*, 2001 ND 31, ¶ 14, 622 N.W.2d 219 ("When parties live together for a time, have children together, and then marry, our Court has made it clear the trial court may properly consider all of their time together."). The length of time parties live together are "the circumstances of the particular case" the district court must consider when determining the equitable division of the marital property, as is "the totality of [a remarried couple's] relationship," *Nelson*, ¶¶ 6, 8, including the length between the marriages, the duration of the second marriage, the marital property, whether the marital property was accumulated before or after the marriage, and other material facts.

2

[¶25] The district court conducted a detailed analysis of the *Ruff-Fischer* guidelines. The court's analysis strongly leaned toward Gene Nagle receiving more of the marital estate, not an equal division. Yet, despite its analysis and findings, the court equally divided the marital property. In its analysis, the court did not identify evidence warranting the equal division of the marital property. Thus, if the court's property division was not based on the legal error of treating the marriage as long term, the court's equal property division was clearly erroneous because the court failed to identify evidence and make findings that support the equal division of the marital property.

3

[¶26] Gene Nagle argues the district court erred in its property division because the court awarded Suzanne Nagle property that she waived her rights to in their first divorce. Gene Nagle misreads *Nelson* and *Stephenson*.

[¶27] In both *Nelson* and *Stephenson*, this Court noted that when the parties remarried, all their property became marital property subject to equitable distribution. 1998 ND 176, ¶ 8; 2011 ND 57, ¶ 22. As stated in *Stephenson*, "A court may consider the source of property when dividing the marital estate, but all property, regardless of its source, must be included in the estate for equitable distribution." 2011 ND 57, ¶ 22. Thus, despite the prior divorce judgment, the parties' property—whether distributed in the prior divorce judgment, obtained before the second marriage, or acquired during the second marriage—was

marital property included in the marital estate for equitable distribution. The district court "was required to divide the parties' property considering the totality of their relationship, and the prior judgment did not apply." *Id.*

[¶28] In other words, the prior divorce judgment did not control the district court's equitable distribution of the marital property in the subsequent divorce. However, in making its equitable distribution, the court was required to consider the source of the property and whether it was accumulated before or after the marriage. *Ceynar*, 2025 ND 53, ¶ 5; *Stephenson*, 2011 ND 57, ¶ 22; *see also Mertz v. Mertz*, 2015 ND 13, ¶ 17, 858 N.W.2d 292 (explaining the time of the acquisition of property and its source is significant when determining equitable division of the marital estate); *Zuger v. Zuger*, 1997 ND 97, ¶ 8, 563 N.W.2d 804 (stating "the source of the property is only one factor for the court to consider in making an equitable distribution"). Because, upon remarriage, all property is deemed marital property subject to equitable distribution in the current divorce and the prior divorce judgment did not apply, i.e., control the court's distribution in the current divorce, Suzanne Nagle was not relitigating the property division in the first divorce by seeking a particular property division in the current divorce. Rather, Suzanne Nagle was litigating for the first time the property division of the current marital estate in the current divorce proceeding.

4

[¶29] In conclusion, the district court's equitable distribution of the marital estate under the *Ruff-Fischer* guidelines is clearly erroneous. Either the court misapplied the law by combining the parties' two marriages and treating the "extremely short" second marriage as long term, or the court failed to identify evidence and make findings that support the equal division of the marital property. Either way, reversal and remand are appropriate. Accordingly, we reverse the court's property division and remand the matter for the court to make an equitable distribution of the marital property under the *Ruff-Fischer* guidelines treating the marriage as short term and to provide an explanation why the division is equitable under the facts and circumstances of this case.

[¶30] "Property division and spousal support are interrelated and intertwined and often must be considered together." *Mertz*, 2015 ND 13, ¶ 27. Because property division and spousal support are interrelated, to the extent the district court's decision on spousal support was related to its property division, the court may reconsider the issue of spousal support in conjunction with the property division.

IV

[¶31] We reverse the district court's property division and remand for the district court to make an equitable distribution of the marital property under the *Ruff-Fischer* guidelines and to provide an explanation why the division is equitable under the facts and circumstances of this case.

[¶32] Jon J. Jensen, C.J.
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

**Crothers, Justice, specially concurring.**

[¶33] I agree with the majority opinion, as far as it goes. However, Gene Nagle argued to the district court that res judicata applies to the first divorce between him and Suzanne Nagle. He argued on appeal that Suzanne Nagle should be prevented from collaterally attacking the property distribution from the first marriage. I believe we should address the issue because the application of res judicata is a question of law. I also believe the district court's failure to abide by that principle led it to mistakenly rely on *Nelson v. Nelson*, 1998 ND 176, 584 N.W.2d 527, for the proposition the parties' two marriages could be treated as one.

[¶34] We have explained the applicability and reviewability of res judicata as follows:

> Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Res judicata means a valid,

11

final judgment is conclusive with regard to claims raised, or claims that could have been raised, as to the parties and their privies in future actions. Whether res judicata applies is a question of law, fully reviewable on appeal.

*Fredericks v. Vogel Law Firm*, 2020 ND 171, ¶ 10, 946 N.W.2d 507 (cleaned up).

[¶35] Here, the Nagles' first divorce was finalized in December 2018. The parties confirmed at oral argument that terms of the first divorce judgment, including property divisions, were fully complied with. When the Nagles remarried, nothing remained to be done under the 2018 judgment. The Nagles remarried three and one half years after the first divorce. The second marriage occurred in August 2022 and the second divorce action commenced in June 2023. Because the first marriage was fully and finally resolved in 2018, res judicata prevents relitigation of any part of the first marriage between the Nagles, including the property division. But, to the extent a party still owns the property, the *result* of the property division in the first marriage necessarily will be the start of the property division in the second marriage. *See* majority opinion, ¶ 13; *Willprecht v. Willprecht*, 2020 ND 77, ¶ 19, 941 N.W.2d 556 ("The [district] court must include all of the parties' assets and debts in the marital estate and then consider the *Ruff-Fischer* guidelines to determine an equitable distribution.").

[¶36] In *In re the Marriage of Parks*, 58 Wash. App. 511, 512, 794 P.2d 59 (1990), Marven Parks appealed from a decree dissolving his and Judy Parks' second marriage, claiming the trial court inappropriately considered the total number of years of the parties' two marriages when it allocated property. *Id.* Washington state had a statute providing, "A decree of dissolution of marriage . . . is final when entered, subject to the right of appeal." *Id.* at 514 (citing Wash. Rev. Code Ann. § 26.09.150 (2021)). On appeal, the court held "the trial court erred as a matter of law" by including the duration of the first marriage in distributing property during the second divorce. *Id.* at 515-16. The court reasoned, "When the court here again considered the length of the parties' first marriage, it in effect reopened the first decree, in contravention of basic principles of res judicata. The distribution in this dissolution should not involve consideration of the first marriage other than to establish the character of the property." *Id.* at 516.

12

[¶37] Under N.D.C.C. § 14-05-24, a divorce court must divide all property and debts. Much like in Washington state, after entry of judgment a North Dakota divorce court does not retain jurisdiction to modify a final property distribution. *Kopp v. Kopp*, 2001 ND 41, ¶ 5, 622 N.W.2d 726. Rather, a court can make a post-judgment redistribution of property and debts only when "a party has failed to disclose property and debts as required by rules adopted by the supreme court or the party fails to comply with the terms of a court order distributing property and debts." N.D.C.C. § 14-05-24(3). No party here claims the continuing jurisdiction authority in N.D.C.C. § 14-05-24(3) applies to the 2018 divorce. Therefore, the judgment in that divorce was final.

[¶38] Gene Nagle argued to the district court and argues on appeal that the court erred following the strictures of *Nelson v. Nelson*, and that res judicata bars reconsideration of facts and property involved in the first property distribution. The court rejected Gene Nagle's argument, instead finding this case was similar to *Nelson* and *Stephenson*, and the *Ruff-Fischer* guidelines should be applied to the facts evolving over both marriages. The court therefore began its property division analysis with each party's employment starting "[a]t the time of their first marriage." As a matter of law, that approach incorrectly blends the two marriages, and incorrectly applies the result in *Nelson*.

[¶39] In *Nelson*, the parties were divorced in 1991, began living together again three months later, and remarried in 1993. 1998 ND 176, ¶ 3. The parties separated in May 1995 and divorced approximately a year later. *Id.* This Court reversed the district court's treatment of the second marriage as short term. *Id.* ¶ 8. However, that result was directed by the fact that, "[a]lthough the second marriage was short when compared to the 24 years they were together in the first marriage, the property of their marital estate remained intact." *Id.* Therefore, terms of the first divorce judgment were not complied with and the division of property ordered in that proceeding never occurred.

[¶40] To the extent the district court also relied on *Stephenson v. Stephenson* to reach its incorrect result, taking that path also was in error. In *Stephenson*, the parties married in 1983 and divorced in 1994. 2011 ND 57, ¶ 2, 795 N.W.2d 357. Terms of the divorce judgment directed Sharrie Stephenson to receive 25% of

Daniel Stephenson's retirement benefits. *Id.* ¶ 3. The parties remarried in 1997, and Daniel Stephenson began drawing retirement benefits that same year. *Id.* Sharrie Stephenson never received her share of the retirement benefits. *Id.* The parties separated in 2005 and began divorce proceedings in 2008. *Id.* ¶ 4. Thus, "The parties' first marriage lasted eleven years and the second marriage lasted thirteen years." *Id.* ¶ 10. This Court in *Stephenson* cited *Nelson* in support of our conclusion, "The court was required to divide the parties' property considering the totality of their relationship, and the prior judgment did not apply." *Id.* ¶ 22.

[¶41] In *Stephenson*, like in *Nelson*, terms of the original divorce were not complied with because the obligee did not receive before the second marriage all of the property she was awarded in the first divorce. It also is significant that the Stephensons' second marriage was long term, which fact itself called for a property division greater than for a short-term marriage. *See Vetter v. Vetter*, 2020 ND 40, ¶ 19, 938 N.W.2d 417 ("An equal division of marital property is a logical starting point in a long-term marriage. While we have said a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage, marriages of longer durations generally support an equal distribution of property.") (cleaned up).

[¶42] The holdings in *Nelson* and *Stephenson* were based on significantly different facts than are present in this case, and I would limit both holdings to their facts. In both cases, the divorced couples' remarriages occurred before the judgments in the first divorces were complied with. In *Stephenson*, the second marriage was long term.

[¶43] Here, the Nagles' first divorce was final, after which each party separately owned their property. To the extent they owned any of that property or accumulated property when they remarried, that property constituted the marital estate when they again divorced. Therefore, I agree we must reverse. But I would do so by expressly holding the district court committed legal error by following the results in *Nelson* and *Stephenson*, by not recognizing the first divorce was res judicata as to the property and debts of that marriage, and by not treating the second marriage as short term and applying the *Ruff-Fischer* guidelines accordingly.

14

[¶44]  Daniel J. Crothers

**McEvers, Justice, concurring.**

[¶45]  I agree with, and have signed with the majority opinion. I write in response to Justice Crothers's special concurrence because I do not think res judicata should be considered on appeal.

[¶46]  While I agree with Justice Crothers that Gene Nagle argued res judicata in the district court, he did not make that argument to this Court. Although he briefly argued that Suzanne Nagle was allowed to collaterally attack her decisions to stipulate certain matters in the first divorce, his argument was that the district court erred in its property division because Suzanne Nagle was awarded property that she waived her rights to by stipulation in their first divorce. His primary argument was that the court clearly erred by treating the parties' second marriage as a long-term marriage, and by concluding the equal distribution of the parties' marital estate was fair and equitable given the second marriage was a short-term marriage. He argued the circumstances of this case can be differentiated from both *Nelson* and *Stephenson*. I agree.

[¶47]  Res judicata principles should not be considered or applied because they were not adequately argued on appeal. Rule 28(b), N.D.R.App.P., governs the content of an appellant's brief, and specifically, Rule 28(b)(4) requires a statement of the issues. Gene Nagle's stated issues were: (1) "Did the lower court err in its reliance on *Nelson v. Nelson*, 1998 ND 176, 584 N.W.2d 527?"; and (2) "Did the lower court err in its equitable distribution concerning the parties' short-term second marriage?" Rule 28(b)(7) also requires citations to authorities and the record on which the appellant relies. Issues are waived if they are not supported by argument, reasoning, or authority. *Sorum v. Dalrymple*, 2014 ND 233, ¶ 15, 857 N.W.2d 96. The term "res judicata" does not appear in Gene Nagle's appellate brief. Gene Nagle cites to no legal authority regarding the principles of res judicata, nor does he cite to the record where such an argument was preserved. Gene Nagle waived any argument regarding the application of the doctrine of res judicata by not raising and briefing it on appeal. *See Northstar Ctr., LLC v. Lukenbill Fam. P'ship, LLLP*, 2024 ND 212, ¶ 72, 17 N.W.3d 1 ("Issues

15

not briefed on appeal are waived."). For these reasons, I do not agree that this Court should consider whether res judicata may have applied.

[¶48] Lisa Fair McEvers