# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 53

Sharon Ceynar,  Plaintiff and Appellee

v.

William Ceynar,  Defendant and Appellant

### No. 20240194

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Jennifer M. Stanley, Minot, ND, for plaintiff and appellee.

H. Malcolm Pippin, Williston, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   William Ceynar appeals from a divorce judgment dividing the marital estate. We affirm, concluding the district court did not err in dividing the parties' property and ordering the sale of the ranch.

I

[¶2]   In 2021, Sharon Ceynar commenced this divorce action. After a bench trial, the district court issued its memorandum decision granting the divorce and dividing the marital estate. The court divided the parties' personal property and debts outright with Sharon Ceynar receiving $1,218,903.90 and William Ceynar receiving $681,827.35 in net assets prior to inclusion of the sale proceeds of the parties' real property and mineral interests. The court ordered the sale of real estate and minerals at public auction with 55% of the sale proceeds to be awarded to William Ceynar and 45% awarded to Sharon Ceynar. The court entered judgment.

II

[¶3]   William Ceynar argues the district court erred in dividing the marital estate. Our standard of review for property distributions is well-established:

> This Court will not reverse the district court's decision related to property distribution unless the findings are clearly erroneous. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support a finding, or if, although there is some evidence to support it, on the entire evidence, we are left with a firm conviction a mistake has been made. This Court views the evidence in the light most favorable to the findings, and the district court's findings of fact are presumptively correct. A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and this Court will not reverse simply because it may have viewed the evidence differently. On appeal, we do not reweigh

1

conflicts in the evidence, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses.

*Swanson v. Swanson*, 2019 ND 25, ¶ 5, 921 N.W.2d 666 (cleaned up).

III

[¶4] William Ceynar argues the district court erred in dividing the marital estate, especially given his large inheritance.

[¶5] "When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties." N.D.C.C. § 14-05-24(1). "In making an equitable distribution of marital property, a court must consider all of the parties' assets." *Swanson*, 2019 ND 25, ¶ 6. The district court must consider the *Ruff–Fischer* guidelines in dividing the property:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* "[A] property division need not be equal to be equitable, but a substantial disparity must be explained." *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 23, 673 N.W.2d 601. "In general, a lengthy marriage supports an equal division of all marital assets." *Id.* "We have repeatedly held that separate property, whether inherited or otherwise, must initially be included in the marital estate, and have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse." *Swanson*, ¶ 9. "The origin of the property is only one factor to consider under the *Ruff–Fischer* guidelines, even if the property was acquired before the marriage or inherited." *Hitz v. Hitz*, 2008 ND 58, ¶ 14, 746 N.W.2d 732.

[¶6] The district court considered the *Ruff–Fischer* guidelines, finding the marriage of 46 years to be a long-term marriage, which favored an equal

2

distribution. William Ceynar was 66 years old at the time of trial and Sharon Ceynar was 65. The court found that while both parties can continue to work, they are at or nearing the typical retirement age, and therefore both are similarly situated with respect to their need for assets that can generate income to fund their retirement. The court found that while Sharon Ceynar testified there were two specific incidents of poor conduct by William Ceynar during the marriage, the amount of testimony was "de minimis" considering the 46-year marriage, and therefore given no weight. The court found the parties lived comfortably, at least towards the end of the marriage, and "appear[ed] to be in fine health"; much of the disputed real property either is, or has the potential to be, income-producing; the "vast majority, if not all, of the parties' property was accumulated during the marriage"; and the parties testified that the land in dispute was inherited from William Ceynar's parents.

[¶7] The district court distributed the parties' personal property and debts outright with Sharon Ceynar receiving $1,218,903.90 in net assets and William Ceynar receiving $681,827.35. The parties initially agreed as to the value of the ranch land, homestead, and buildings, valuing the real estate at $5,722,339. William Ceynar amended his valuation to $5,720,175. As to their mineral interests, the parties failed to value some of their interests (such as their oil rights), and disagreed as to the value of others (scoria rock), assigning significantly different values. The court ordered the real property, including the surface and subsurface minerals, to be sold to the highest bidder at public auction. The court ordered that 55% of the sale proceeds will be awarded to William Ceynar and 45% to Sharon Ceynar. The court awarded more of the real property proceeds to William Ceynar because "the land was inherited through his family." The court stated it also considered the length of the marriage and needs of the parties as they enter retirement.

[¶8] William Ceynar argues he is entitled to a larger property distribution given that he inherited almost six million dollars of real property from his family, accounting for roughly 75% of the marital estate. He cites *Hitz*, *Swanson*, and *Willprecht* for support. None of these cases are dispositive. While the district court in all three cases deviated from a 50/50 equal division, the courts made

3

findings not present here; and ultimately, we must adhere to our standard of review.

[¶9] In *Hitz*, the husband was awarded 62% of the marital estate because in addition to him bringing twice as much property into the marriage, the district court found the wife committed economic waste or misconduct after separation. 2008 ND 58, ¶¶ 8, 15. In *Swanson*, the husband was awarded 65% of the marital property; however, the trial court found "no real substantial disparity" in the division of the property because the husband was "assigned all of the farm's debt." 2019 ND 25, ¶¶ 3, 10. While the trial court in *Swanson* "considered the fact that [the husband] inherited the farmland from his mother during the marriage, it awarded the property to [him] because [it] did not find [the wife] capable of servicing the farm's debt." *Id.* ¶ 10. In *Willprecht*, the district court awarded the husband 63% of the marital estate, explaining, "Taking into account the outright gift of property from [the husband's] family to him valued now at $864,273, discounted land purchases [from his family], other gifts, and the 'double counting' of crop assets, there is no real substantial disparity in the assets awarded to each party." *Willprecht v. Willprecht*, 2020 ND 77, ¶ 21, 941 N.W.2d 556. In all three cases, we applied the deferential "clearly erroneous" standard in affirming the district court's property distributions. William Ceynar has not cited a case where we reversed a relatively equal property division in a long-term marriage based solely on a party's inheritance accounting for a large percentage of the marital property.

[¶10] Because the district court ordered the real property to be sold at public auction, it is unclear the exact percentage of the net marital estate the parties will receive. Taking only William Ceynar's own valuations of the ranch land, homestead, buildings, and scoria rock into consideration, he would receive a higher percentage of the net marital estate than Sharon Ceynar. After amending his valuations of the ranch land, homestead, and buildings, William Ceynar valued this real estate at $5,720,175. He valued the scoria rock at $210,000. Based on these valuations ($5,930,175 total) and a 55% share of the sale proceeds, William Ceynar would receive $3,261,596.25, less sale expenses. Sharon Ceynar's 45% would give her $2,668,578.75, less sale expenses. Adding these amounts to the rest of the marital estate (excluding the oil rights and other mineral rights not

4

valued), William Ceynar would receive $3,943,423.60, and Sharon Ceynar would receive $3,887,482.65. Therefore, using William Ceynar's valuations, he would receive at least $55,940.95 more than Sharon Ceynar (50.36%/49.64% split).[1] This disparity would only increase with the sale of the other mineral interests because William Ceynar shall similarly receive 55% of those proceeds.

[¶11] William Ceynar's only argument that he is entitled to a larger distribution is that the land was received through his inheritance. The origin of the property, such as inheritance, is only one factor to consider under the *Ruff–Fischer* guidelines. *Hitz*, 2008 ND 58, ¶ 14. Because the district court found this to be a long-term marriage (46 years), the baseline is an equal division. *Amsbaugh*, 2004 ND 11, ¶ 23. Relying on William Ceynar's own valuations of the real estate and scoria rock (without including the other mineral interests), William Ceynar is likely to receive slightly more of the marital estate. Even accounting for sale expenses, William Ceynar has not shown that Sharon Ceynar would receive more marital property. To the extent there is unequal division or there will be a substantial disparity, that breaks in favor of William Ceynar because he will receive 55% of the remaining mineral interests. The court made the 55%/45% real property award, in part, for the exact reason William Ceynar is arguing: the land was inherited through his family. William Ceynar cites no evidence in the record showing he would receive less than 50% of the net marital estate. We therefore conclude the court's property division is equitable and not clearly erroneous.

IV

[¶12] William Ceynar argues the district court erred in ordering the sale of the real property because neither party requested the sale. He cites no legal authority preventing the court from ordering the sale of marital real property when the parties did not request the sale. Rather, we have affirmed property distributions where the appellant requested the farm, ranch, or farmland be awarded to him

---

[1] These figures do not include sale expenses, such as an auctioneer or broker's commission. At oral argument, William Ceynar referred us to his post-trial briefing, which acknowledges that even with these expenses, he would expect to receive slightly more of the net marital estate (50.8%) based on a net sale price of $6 million.

or her and the district court ordered the property to be sold. *See Schoenwald v. Schoenwald*, 1999 ND 93, ¶¶ 22-23, 593 N.W.2d 350; *Christmann v. Christmann*, 1997 ND 209, ¶¶ 7, 10, 570 N.W.2d 221; *Dieterle v. Dieterle*, 2013 ND 71, ¶¶ 24, 26, 830 N.W.2d 571. This is not a partition action where the court is required to partition the property unless "a partition cannot be made without great prejudice to the owners." N.D.C.C. § 32-16-01. In a divorce action, the court makes "an equitable distribution of the property." N.D.C.C. § 14-05-24(1).

[¶13] William Ceynar asserts the district court misapplied the law by using a partition analysis under N.D.C.C. ch. 32-16 instead of the law governing the division of marital property. While the court used the word "partition" several times in its memorandum decision, it did not undertake a partition analysis or apply the law of partition under N.D.C.C. ch. 32-16. "Partition" was used by the court for its common meaning: "the action of parting: the state of being parted: division," *Merriam-Webster's Collegiate Dictionary* 904 (11th ed. 2005), and in contrast with a sale of real property. The court stated that it was ordering the sale of the real property as opposed to dividing it between the parties (i.e. partition), but that the parties may agree to a division before the public sale. The court correctly applied the law on the distribution of marital property.

[¶14] William Ceynar argues the ranch is his "legacy and livelihood moving forward." He testified that the ranch has been in his family since his grandmother bought it, and he has lived on the ranch almost his entire life. While the district court is not required to partition the property, "courts should avoid a property distribution which will destroy or damage the ability of one of the parties to earn a livelihood or which will destroy the value of the property." *Pankow v. Pankow*, 371 N.W.2d 153, 157 (N.D. 1985). We have "recognized on numerous occasions 'the importance of preserving the viability of a business operation like a family farm,' and 'liquidation of an ongoing farming operation or business is ordinarily a last resort.'" *Swanson*, 2019 ND 25, ¶ 10. "However, those decisions have also recognized this laudable purpose is to be achieved only if it is possible to do so without detriment to the other party." *Marschner v. Marschner*, 2001 ND 4, ¶ 17, 621 N.W.2d 339; *see also Linrud v. Linrud*, 552 N.W.2d 342, 346 (N.D. 1996) ("The goal of preserving a [farming] business, however, does not call for a windfall for one spouse."). Sharon Ceynar argues there is no

evidence of William Ceynar's claim that the ranch is required to further his legacy and livelihood, noting he was no longer ranching, but rather leasing the land, and based on his tax returns, he is not generating significant income from the ranch. She notes they only owned eight head of cattle at the time of trial.

[¶15] The district court made relatively sparse findings as to the sale of the real property, stating that "[g]iven the unique circumstances that the real estate and surface and subsurface minerals presents to the Court in partition, the Court is left with no choice but to order the sale of the real property and surface and subsurface minerals to the highest bidder at public auction." "We will not remand for clarification of findings of fact when, through inference or deduction, we may discern the district court's rationale." *Williams v. Williams*, 2021 ND 134, ¶ 6, 962 N.W.2d 601; *see also Rothberg v. Rothberg*, 2006 ND 65, ¶ 14, 711 N.W.2d 219 ("Although findings of fact should be stated to afford a clear understanding of the court's decision, findings are adequate if this Court can discern from them the factual basis for the trial court's determination.").

[¶16] Property divisions are "based on the particular circumstances of each case." *Holden v. Holden*, 2007 ND 29, ¶ 10, 728 N.W.2d 312. If a farming operation "is not an economically viable enterprise, it should be sold and the proceeds divided between the parties." *Marschner*, 2001 ND 4, ¶ 20. William Ceynar has failed to cite evidence in the record showing he depends on the ranching operation for his livelihood. The parties' joint 8.3 property and debt listing shows they owned no more than eight head of cattle. We therefore reject any assertion by William Ceynar that partition is needed to save the ranching operation.

[¶17] As mentioned, the parties failed to value some of their mineral interests in their property and debt listing, stating the value as "unknown," and disagreed by a large margin as to the value of the other mineral interests. Trial did not supplement or clarify these omissions or gaps in value (other than the frac sand). William Ceynar requested the oil interests be given to the party awarded the

7

corresponding surface rights.[2] He testified, however, the oil rights were in and under land that is not owned by the parties. He further testified that he was unaware of how much unmined scoria and frac sand existed, noting the latter was "potential frac sand," which he originally valued at $500,000. The district court found that William Ceynar abandoned his frac sand valuation of $500,000 after he acknowledged it was speculative and should be reduced to $0. Since William Ceynar proposed awarding the frac sand to Sharon Ceynar, this left an even larger disparity in his property division proposal. Due to the relatively unknown location, quantity, or value of the minerals, a public sale to reach an equitable result was not improper for the court to order.

[¶18] Craig McIvor, William Ceynar's appraiser, testified to the difficulty in dividing property in the Badlands, such as this property, stating, "Sometimes it's difficult for, you know, for fencing and divid[ing] this stuff down in the badlands. . . . It's never going to end up where it's dollar for dollar. . . . Somebody's going to have to write a check back and forth for the difference." William Ceynar testified there is "[r]eally no way to fence that—those badlands" located in Section 19 of the subject property. Sharon Ceynar's proposed division of the property contemplated splitting Section 19, which according to William Ceynar "would have been almost impossible to split that in half and to fence that."

[¶19] McIvor and William Ceynar proposed dividing the property along a county road, which would give William Ceynar the Section 19 property. After eliminating his $500,000 frac sand valuation, which he originally proposed should be awarded to Sharon Ceynar, William Ceynar's proposal would give Sharon Ceynar $3,520,355 in net assets, and he would receive $4,381,272 (55.45%/44.55% in his favor). William Ceynar has not conceded that Sharon Ceynar's proposal—which did not call for the sale of property but more equally divided the property—is an equitable proposal that should be adopted by the court. While William Ceynar cites his proposal dividing the real property

---

[2] It appears William Ceynar has since adopted Sharon Ceynar's proposal that the oil interests be split 50/50.

unequally in his favor, he failed to propose a division of the property, which if not sold, would award the property equally to the parties. We conclude the court did not err in rejecting William Ceynar's disproportionate proposal and determining a sale of the ranch was equitable under the circumstances.

[¶20] William Ceynar contends the public sale of the real property is "essentially a fire sale of the land and minerals with a percentage formula that could very well result in [him] ending up with less than 50% of the marital estate." We reject this argument. The district court ordered that "[t]he parties are free to agree to a partition of the property prior to the date of the sale in lieu of the sale." At oral argument, William Ceynar, through counsel, agreed that nothing would prohibit him from bidding on the land himself at the public auction, preventing a "fire sale" price. Therefore, even if the parties are unable to agree on a partition, William Ceynar can still bid on the land.

[¶21] We conclude the district court did not err in ordering the sale of the ranch.

V

[¶22] The judgment is affirmed.

[¶23]  Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr